UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

DELAWARE RIVER STEVEDORES
441 N. 5th Street
Philadelphia, PA 19123,

        Plaintiff,

        v.

INTERNATIONAL LONGSHOREMEN'S
ASSOCIATION, LOCAL 1242
236 E. Richmond Street
Philadelphia, PA 19125

and

PHILIP RENZI
Business Agent
International Longshoremen's Association, Local 1242
236 E. Richmond Street
Philadelphia, PA 19125,

        Defendants.

NO. _____

## VERIFIED COMPLAINT

### Preliminary Statement

1. Pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§185, Plaintiff, Delaware River Stevedores, Inc. ("DRS"), hereby petitions this Court to enjoin and restrain the above-named defendants from engaging in or soliciting, coercing or encouraging others to engage in, or threatening to engage in a work stoppage at the Tioga Marine Terminal ("Tioga") in breach of a valid no-strike provision in the collective bargaining agreement between DRS and defendant, International Longshoremen's Association, Local 1242 (the "Union" or "Local 1242").  Since the morning of May 15, 2017 and continuing to present,

1

members, officers and agents of the Union have instituted an unlawful work stoppage at Tioga in violation of the parties' collective bargaining agreements. As a result of the defendants' unlawful actions, DRS will suffer irreparable harm, including but not limited to, inability to unload a ship at Tioga on May 15, 2017, loss of profit, loss of present customers to competitors, loss of future business, loss of goodwill and impairment of its reputation for honoring customer contracts.

## Jurisdiction and Venue

2. This Court has jurisdiction pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), which provides that United States District Courts have jurisdiction over suits for violation of contracts between employers and labor organizations.

3. Pursuant to Section 301(c) of the Labor Management Relations Act, 29 U.S.C. §185(c), venue is proper in the Eastern District of Pennsylvania where the Union is engaged in representing employee members.

## The Parties

4. Plaintiff, DRS, is a full-service cargo handler, stevedore and marine terminal operator, and operates the Tioga Marine Terminal in the Port of Philadelphia. DRS maintains offices at 441 N. 5th Street, Philadelphia, PA 19123.

5. Defendant, Local 1242 is an unincorporated labor organization and is the collective bargaining representative for certain hourly employees of DRS. The Union maintains an office at 236 E. Richmond Street, Philadelphia, PA 19125. Local 1242 is a labor organization within the meaning of the National Labor Relations Act.

6. Defendant, Philip Renzi, is a Business Agent for Local 1242, and maintains an office in Philadelphia, PA at the offices of the Union.

2

<u>The Applicable Collective Bargaining Agreement</u>

7. DRS and Local 1242 are parties to a valid collective bargaining agreement governing the terms and conditions of employment of certain employees employed by DRS at Tioga. That agreement is currently binding on the Union and its representatives, agents, officers and members.

8. The parties' collective bargaining agreement sets forth mandatory and exclusive grievance procedures for the settlement of disputes and grievances. These procedures provide that all disputes and grievances of any kind or nature whatsoever arising under the terms and conditions of the agreement and all questions involving the interpretation of the agreement shall be referred to a grievance procedure ending in binding arbitration and there shall be no strike and no lockout during the pendency of any dispute. A copy of the grievance and arbitration provision from the parties' collective bargaining agreement is attached as Exhibit 1.

Factual Background

9. During the week of May 8 to 12, 2017, Andrew Sentyz, Vice President of DRS received a call from a customer regarding a discrepancy in the customer's account. Mr. Sentyz contacted Gerald Heckler, who is employed as the Chief Clerk and is a member of Local 1242 to discuss the customer's complaint. During that conversation, Mr. Heckler became agitated and raised his voice to Mr. Sentyz.

10. During the morning of May 15, 2017, Mr. Sentyz approached Mr. Heckler at Tioga, and attempted to speak to him again regarding the customer complaint. Mr. Heckler again became agitated and responded to Mr. Sentyz using abusive and profane language.

11. In response to Mr. Heckler's abusive and insubordinate response, Mr. Sentyz suspended him for insubordination.

12. After Mr. Sentyz suspended Mr. Heckler, he received a phone call from Philip Renzi, Local 1242's Business Agent, who demanded that Mr. Heckler be returned to work immediately, and threatened that if Mr. Heckler was not returned to work, the Union would establish a picket line at Tioga.

13. Mr. Sentyz declined to return Mr. Heckler to work. Immediately thereafter, Local 1242 employees working at Tioga walked off the job, and the Union established a picket line at the terminal. Other employees represented by different unions are honoring Local 1242's picket line, which has resulted in a shutdown of DRS's operations at Tioga.

14. The Union has taken no action to stop this illegal work stoppage. On the contrary, on information and belief, officials of Local 1242, including Business Agent Renzi, are directing employees to engage in the work stoppage to protest the suspension of Mr. Heckler.

## Count I – Breach of Contract

15. Plaintiff incorporates by reference as if fully set forth herein each and every allegation of Paragraphs 1 through 14 above.

16. This cause of action arises under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a).

17. Section 301 provides that federal courts have jurisdiction over suits for violation of contracts between an employer and a labor organization representing its employees.

18. The dispute about the propriety of DRS's decision to suspend Mr. Heckler is subject to the mandatory grievance and arbitration provisions of the parties' collective bargaining agreement.

19. The Union's work stoppage violates the no-strike requirement of the parties' collective bargaining agreement, which explicitly provides that the Union cannot engage in any work stoppage during the pendency of a dispute or grievance.

20. This Court has jurisdiction under Section 301 of the Labor Management Relations Act, 29 U.S.C. § to enjoin the Union, and its representatives, agents, officers and members from conducting a work stoppage over a dispute that is subject to arbitration in accordance with the parties' collective bargaining agreement.

21. Unless Defendants are enjoined from their illegal and unlawful actions, the ongoing strike, work stoppage and refusal to perform services will cause immediate and irreparable harm to DRS, the amount of which cannot currently be ascertained, in that:

    a) The operations of DRS will be hindered, and its ability to satisfy its contractual obligations to its customers will be greatly impaired;

    b) DRS will be exposed to claims by its customers as a result of damages they may incur due to the Union's unlawful interference in the performance of contractual obligations;

    c) DRS will suffer a temporary and permanent loss of business as a result of damage to its goodwill and reputation in the industry, and DRS's ability to secure future contracts will be impaired; and

    d) DRS will be unable to satisfy its obligation to unload ships docked at Tioga.

22. DRS has exhausted all available remedies to prevent the unlawful activity and has no adequate remedy at law.

23. As to each item of relief sought herein, greater injury will be inflicted on the public and DRS if such relief is denied than will be inflicted upon Defendants by the granting thereof.

<u>Prayer for Relief</u>

WHEREFORE, Plaintiff prays that this Honorable Court:

1. Issue a Temporary Restraining Order without hearing and after notice and hearing issue a Preliminary Injunction, restraining and enjoining defendants and all other persons acting in concert or participation with defendants from engaging in the aforementioned unlawful conduct.

2. After a hearing, order the defendants to pay plaintiff and compensate for all damages caused by the defendants for loss of property and loss of business, including any damages for which it may be responsible to their customers and suppliers.

3. Order defendants to reimburse plaintiff for all attorneys' fees and costs incurred in bringing this action; and,

4. Grant plaintiff such other further relief as the Court shall deem proper.

COZEN O'CONNOR

_____
JAMES J. SULLIVAN (PA Bar No. 33189)
ANDREW J. ROLFES (PA Bar No. 78809)
ANNA WILL KENTZ (PA Bar No. 316960)
One Liberty Place
1650 Market Street
Suite 2800
Philadelphia, PA  19103
Telephone: 215.665.2000
Toll Free Phone: 800.523.2900
Facsimile: 215.665.2013

Attorneys for Plaintiff,
Delaware River Stevedores, Inc.

Dated: May 15, 2017

## VERIFICATION

I, Andrew R. Sentyz, employed by Delaware River Stevedores, Inc. ("DRS") as Vice President, and I am authorized to execute this Verification on behalf of DRS. I hereby verify that I have read the foregoing Verified Complaint, and that the averments contained therein are true and correct to the best of my knowledge, information and belief. This statement is made subject to the penalties relating to unsworn falsification to authorities.

Executed this 15th day of May, 2017.

_____
ANDREW R. SENTYZ

# EXHIBIT 1

**PORTS OF THE DELAWARE RIVER MARINE TRADE ASSOCIATION**
SUITE 301 PORT ADMINISTRATION BUILDING
3460 N. DELAWARE AVENUE
PHILADELPHIA, PA 19134

(215) 426-2510                                                                                                       (215) 426-4553

**CIRCULAR NO.:** 60-99                                        May 20, 1999

TO:    ALL PMTA EMPLOYER MEMBERS

RE:    <u>Grievance and Arbitration Procedure</u>

Ladies and Gentlemen:

Attached please find the new Grievance and Arbitration Procedure as agreed to by the PMTA and the ILA.

All grievances filed from this date forward and until further notice will be processed in accordance with time limits as outlined in this agreement.

Please note that default judgments can be awarded under this procedure if the time limits are not adhered to.

If you have any questions, please feel free to call.

Sincerely,

*[signature]*

Uwe Schulz
President

US:pas

Attachment

CC:    J. Paylor, International Vice President
         R. Gladden, Atlantic Coast District Vice President
         A. J. D'Angelo, Jr., Esquire
         J. J. Kane, Esquire
         All ILA Locals

29. <u>GRIEVANCE AND ARBITRATION</u>:

<u>Section 1</u>

All disputes and grievances of any kind or nature whatsoever arising under the terms and conditions of this and all questions involving the interpretation of this Agreement shall be processed in the following manner:

STEP 1: Either party shall notify the other party in writing within twenty (20) calendar days of the occurrence on which the grievance is based. The party so notified shall respond to the other party in writing within seven (7) calendar days after notification. In an emergency situation to address alleged unsafe working conditions, either party can request a job site grievance to be attended by the Grievance Committee referred to in Step 2 below. If either

party fails to attend the said job site grievance, after receiving adequate written notice by way of mail, telegram or fax, that party will thereby waive its rights in the grievance and an award by default shall be rendered in favor of the other party.

STEP 2: In the event the grievance is not settled at Step 1, the grievance may then be presented in writing to a Grievance Committee within fourteen (14) calendar days after the date the answer was due or received. The Grievance Committee shall consist of two (2) individuals selected by the PMTA and two individuals selected by the Union. The Grievance Committee shall meet within ten (10) calendar days after the grievance is submitted. Either party in connection with any dispute or grievance where visual observation may be helpful in the resolution of the dispute or grievance may request that the Joint Grievance Committee meet at the job site. The Grievance Committee shall have seven (7) calendar days after the date of the Grievance Committee meeting to issue a decision in writing. If the Grievance Committee fails to meet within the time limits specified, the grieving party (Union or Employer) may process the grievance to Step 3 or may opt to permit the Step 2 meeting take place.

STEP 3: Should the Grievance Committee be unable to resolve the issues submitted, either party may appeal the matter to Arbitration by filing a written demand with the Arbitrator to be selected by the parties as set forth herein. The demand must be filed with the American Arbitration Association in accordance with its rules on voluntary labor arbitration within twenty (20) calendar days after the Grievance Committee's answer was due or received in Step 2.

Either party in connection with any dispute or grievance where visual observation may be helpful in the resolution of the dispute or grievance may request that the Arbitrator and the parties meet at the job site.

Each ILA Local and the PMTA shall select an Impartial Arbitrator from a panel of Arbitrators submitted by the American Arbitration Association in accordance with its rules on voluntary labor arbitration.

The Arbitrator thus selected shall conduct their hearings and procedures in accordance with the Rules of the American Arbitration Association, except that upon request by either party, in a matter alleging violation of the no-strike/lockout provision of the Article, they shall be obliged to render their decisions within forty-eight (48) hours of the conclusion of their hearing or procedures.

Authority of the Arbitrators. The Arbitrators will make their findings and render their decisions to resolve the disagreements. The Arbitrators shall not have jurisdiction to add to modify, vary, change or remove any terms of the Collective Bargaining Agreement.

Effects of Decision. The decisions of the Arbitrators shall be final and binding upon the parties.

Retroactivity. Awards or settlements of grievances shall in no event be made retroactive beyond the date of the alleged grievance. All claims for back wages shall be limited to the amount agreed to by the Employer and the Union, or ordered by the Arbitrator, as the case may be, less any unemployment compensation or other compensation that the aggrieved employee may have received from any source during the period for which back pay is claimed.

Should the terms and conditions of an Agreement fail to specifically provide for an issue in dispute or should a provision of an Agreement be the subject of disputed interpretation, the Arbitrator shall consider port practice in resolving the issue before him or her. If the Arbitrator determines that there is no port practice to assist him or her in determining an issue not specifically provided for in the Collective Bargaining Agreement or no port practice to assist him or her in determining the interpretation of the Agreement, the issue shall become the subject of negotiation between the parties.

There shall be no strike, sympathy strike, picketing, stoppage of work, slowdown, walkouts/sitdowns, sickout, job action, boycott or other illegal interference with operations or no lockout during the pendency of any dispute or issue which is before the Grievance Committee or Arbitrator.

The cost of Arbitrator's fees in all arbitration proceedings under this Agreement will be funded by PMTA.

The perishable cargo perpetual no-strike clause is attached hereto as Appendix B.